# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>  CHAOMEI HU,<br><br>          Debtor | Chapter 13<br>Case No. 22-30040-EDK |

### **MEMORANDUM OF DECISION**

Before the Court, after an evidentiary hearing (the "Hearing"), is an "Emergency Motion of Mulberry House Condominium Association for Relief from the Automatic Stay and Request for Expedited Determination (11 U.S.C. § 362(d)(1) & (2))" (the "Motion") through which the Mulberry House Condominium Association (the "Association") requests relief from the automatic stay imposed by 11 U.S.C. § 362(a) to, *inter alia*, close on a prepetition foreclosure sale of a condominium unit. Resolution of the Motion requires the Court to determine whether the prepetition foreclosure sale of the unit was validly conducted and, if so, whether the debtor retained a right of redemption prior to the debtor's bankruptcy filing.

The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 based on the documents submitted into evidence at the Hearing, the credible testimony of the witnesses, and the Court's own records. *See Currie v. Wells Fargo Bank, N.A. (In re Currie)*, Slip Copy, Bankr. No. 11-17349-JNF, Adv. No. 12- 1009, 2013 WL 1305805, *1 n.1 (Bankr. D. Mass. March 28, 2013) ("The Court may take judicial notice of the documents in the debtor's file and those in the Court's own records.").

1

I.      FACTS AND POSITIONS OF THE PARTIES

In 2016, Chaomei Hu (the "Debtor") purchased a condominium unit located at 101 Mulberry Street in Springfield, Massachusetts (the "Unit"). After the Debtor defaulted on condominium common charges, the Association brought an action in the Springfield district court (the "District Court") to foreclose on its statutory lien for the unpaid common charges. On August 7, 2018, the District Court issued findings and an order (the "District Court Order") permitting the Association to sell the Unit to satisfy its judgment in accordance with Massachusetts General Laws ("MGL") chapter 254, § 5 and 5A. Pursuant to those statutes, the District Court Order required notice of the foreclosure sale to be published in the Springfield Republican Newspaper for three consecutive weeks prior to the sale. In the event of a sale that complied with the District Court Order and the statutory requirements, the District Court ordered that "the [Association] shall be entitled to possession of the Unit free and clear of all tenants and occupants, including but not limited to the [Debtor] and anyone claiming by, through, or under the [Debtor] . . . ." Motion, Exhibit B, District Court Order at 2, ¶ 9, Feb. 18, 2022, ECF No. 21. A copy of the District Court Order was recorded in the appropriate registry of deeds. Affidavit of Robert C. Sacco, March 17, 2022, ECF No. 68.

In November 2018, the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[1] (the "First Bankruptcy Case"). *See* Ch. 13 Case No. 18-31036-EDK, D. Mass. At the time the First Bankruptcy Case was filed, the Debtor owed over $18,000 in condominium common charges, costs, and fees, which the Debtor proposed to pay through the confirmed Chapter 13 plan. In the fall of 2019, the Debtor vacated the Unit and began renting to a third party. The Debtor testified that she informed her bankruptcy attorney that she had vacated

---

[1] *See* 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code").

2

the unit, but no notice of change of address for the Debtor was filed in the First Bankruptcy Case. The First Bankruptcy Case was ultimately dismissed in June 2021 for failure to make plan payments.

Not only did the Debtor fail to file a notice of change of address with the bankruptcy court after she vacated the Unit, the Debtor also failed to inform the Association or counsel for the Association of any change in address. Both Elizabeth Barnes, the CEO for the management company working on behalf of the Association, and Michael Hogan, the senior property manager, credibly testified that although they were aware that a tenant was living in the Unit, the Debtor never completed an "owner fact sheet" specifying a mailing address different from the Unit address or otherwise informed the Association of a mailing address in lieu of the Unit address. The checks used by the Debtor to make condominium fee payments did not include an address for the Debtor. And the Debtor testified that she did not provide a mailing address other than the Unit address to the Association or the management company.

After the dismissal of the First Bankruptcy Case, the Association scheduled a foreclosure sale of the Unit for January 20, 2022 and published notice of the sale for three consecutive weeks in the Springfield Republican newspaper. On December 28, 2021, after inquiring of the Association as to whether the Debtor had specified a mailing address other than the Unit and being informed that the Debtor had not, counsel for the Association sent a letter, by both first class and certified mail, informing the Debtor of the scheduled auction sale using the Unit address and a New York address for the Debtor noted on the 2016 deed. The letter included a copy of the notice of sale published in the newspaper, included a copy of the District Court Order, and informed the Debtor that the foreclosure sale was scheduled for January 20, 2022. The letter sent by first class mail to the Unit was not returned and tracking information for the certified mail sent to the Unit

indicates that the letter was "delivered to an [unspecified] individual." Affidavit of Robert C. Sacco, Ex. E, March 17, 2022, ECF No. 68. However, both the first class mail and the certified mail sent to the New York address were returned as undeliverable.

On January 6, 2022, the Debtor attempted to visit the office of the Association's management company shortly after the end of office hours. Because the Debtor was subject to a no trespass order, she was stopped by a security guard. According to the Debtor, she told the security guard that she wanted "all the paperwork" for the Unit and had some checks to deliver. The security guard called Barnes on her cell phone and was given the name and contact information for the Association's attorney to give to the Debtor. While it is not entirely clear from the testimony, it does not appear that the Debtor attempted to contact the attorney at that time.

On January 20, 2022, the Association conducted a foreclosure sale of the Unit by auction. The high bidder signed a memorandum of sale to purchase the property for $46,000, with the closing scheduled to take place on February 21, 2022. Before the sale could close, however, the Debtor commenced the present bankruptcy case by filing a voluntary petition under Chapter 13 on February 11, 2022. In the present case, the Debtor has filed an application to employ a real estate broker and indicates in the Chapter 13 plan that she may attempt to sell the Unit to pay the Association's claim.

The Association filed its Motion seeking relief from the automatic stay imposed by § 362(a) of the Bankruptcy Code to allow the Association to close on the sale and to initiate any eviction proceedings that may be necessary. In the Debtor's initial opposition to the Motion (the "Initial Opposition"), the Debtor argued that the Debtor did not receive written notice of the foreclosure sale, that she was not told of the impending foreclosure sale when she visited the management company's offices on January 6, and that no one inquired of the Debtor's mailing

4

address at the time. Relying on *Weiss v. U.S. Bank, N.A. (In re Mularski)*, 565 B.R. 203, 204 (Bankr. D. Mass. 2017), the Debtor further stated that, because a foreclosure deed was not filed at the registry of deeds, "the right of redemption and equitable title remained with the Debtor." Opposition at 5, Feb. 28, 2022, ECF No. 38. The Debtor also complained that various costs and charges were not sufficiently detailed and that the Debtor should be permitted to retain the Unit since "equity abhors a forfeiture." *Id.* At a preliminary nonevidentiary hearing held on March 2, 2022, the Court expressed some skepticism regarding the Debtor's reliance on the *Mularski* case and continued the matter for an evidentiary hearing and invited the parties to file further briefs.

In its supplemental brief, the Association urged the Court to find that the notice provided to the Debtor was sufficient and that the foreclosure sale was validly conducted pursuant to applicable Massachusetts law. Pointing to MGL Chapter 254, § 5A, the Association argues that the Debtor's right of redemption was extinguished on the date of the foreclosure auction when the memorandum of sale was signed. The Association bolsters its argument by reference to mortgage foreclosure cases, wherein courts have held that an owner's equity of redemption is extinguished at the time of execution of a memorandum of sale by the high bidder at a foreclosure auction.

In the Debtor's supplemental opposition (the "Supplemental Opposition"), the Debtor reported that the Debtor's proposed broker had not been given access to the Unit and attached emails between counsel to support that contention. The Debtor argues that the denial of access "demonstrates a pattern of obstinance of the [Association], a pattern that led to an improper foreclosure sale." Supplemental Opposition at 3, March 17, 2022, ECF No. 66. Relying on *Bon v. Graves*, 103 N.E. 1023 (Mass. 1914), the Debtor says that strict compliance with statutory notice requirements was not sufficient and that by failing to make more vigorous attempts to notify the Debtor of the impending foreclosure sale, the Association breached its obligation of good faith.

5

The Court held an evidentiary hearing on the Motion (the "Hearing") on March 17, 2022 at which five witnesses testified and several documents were submitted into evidence. At the conclusion of the Hearing, counsel for the Association reiterated the arguments that notice was appropriate and statutorily compliant and that the Debtor's right of redemption was extinguished by the foreclosure sale. Noting the Court's earlier skepticism regarding the Debtor's reliance on the *Mularski* decision, Debtor's counsel did not further argue that the Debtor's right of redemption was not extinguished by the foreclosure sale, but relied instead on the Debtor's contention that the foreclosure sale itself was invalid. At the conclusion of the Hearing, the Court took the matter under advisement.

II.   DISCUSSION

Pursuant to § 362(d)(1) of the Bankruptcy Code, the automatic stay that arises upon the filing of a bankruptcy case may be terminated "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Initially, the moving party has the burden of establishing prima facie eligibility for stay relief. . . . But the debtor has the ultimate burden of persuasion on 'all issues other than "the debtor's equity in property."'" *In re The Financial Oversight and Management Board for Puerto Rico*, 939 F.3d 340, 347 (1st Cir. 2019) (quoting *Sonnax Indus., Inc. v. Tri Component Products, Corp. (In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990)) (internal citations omitted); *see also* 11 U.S.C. § 362(g).

Where a debtor has been divested of an equitable interest in property and no longer retains a right of redemption on the bankruptcy filing date, courts have held that "cause" exists to grant relief from the automatic stay. *See T.D. Bank, N.A. v. LaPointe (In re LaPointe)*, 505 B.R. 589, 597 (B.A.P. 1st Cir. 2014) (relief from stay warranted where debtor was "divested of all equitable

interests in the property as of the petition date," and had no right of redemption by virtue of prepetition foreclosure sale); *see also Financial Oversight*, 939 F.3d at 348 (favorably citing *In re Madison*, 438 B.R. 866, 870 (Bankr. D.S.C. 2010) ("Where debtor has been divested of all but bare legal title through a foreclosure sale, cause exists to grant relief from the automatic stay to permit Creditor to conclude any act remaining in the sale process and take possession of the property.")).

Accordingly, if the Court finds that the foreclosure sale of the Unit was validly conducted and the Debtor did not retain a right of redemption as of the petition date, relief from the automatic stay for cause should be granted pursuant to 11 U.S.C. § 362(d)(1).

### A. Validity of Foreclosure Sale – Obligation of Good Faith

In the mortgage foreclosure context, which both parties have relied on by analogy to foreclosure by a condominium association, Massachusetts courts have held that "[i]n executing the power of sale, the [mortgagee], in addition to a literal compliance with the terms of the power, [is] bound to exercise good faith and to put forth reasonable diligence to protect the interests of the mortgagor." *States Resources Corp. v. The Architectural Team, Inc.*, 433 F.3d 73, 80 (1st Cir. 2005) (quoting *Atlas Mortgage Co. v. Tebaldi*, 24 N.E.2d 554, 557 (Mass. 1939)). The Debtor agrees that the statutory requirements for condominium association foreclosure sales were complied with, but has argued that the Association breached its obligation of good faith in carrying out the foreclosure by failing to take additional steps to verbally notify the Debtor of the foreclosure sale and/or ascertain the Debtor's current mailing address.

But "proof of a breach of good faith requires more than mere assertions and unrealistic expectations." *Dooling v. James B. Nutter & Co.*, 139 F.Supp.3d 505, 518 (D. Mass. 2015). Generally speaking, the obligation of good faith is "satisfied if a mortgagor complies with the

7

statutory foreclosure requirements, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." *Shaw v. Bank of America, NA*, No. 10-cv-11021, 2015 WL 224666, *7 n.6 (D. Mass. Jan. 15, 2015); *see also States Resources*, 433 F.3d at 81 (rejecting claim that foreclosure was not conducted in good faith where there was no "evidence of self-dealing, or evidence that [the foreclosing party] might have a motive for undermining the foreclosure sale, or any other showing of misconduct"); *FDIC v. Elder Care Servs.,* 82 F.3d 524, 527 (1st Cir. 1996) ("Normally, a party suggesting fraud or bad faith is expected to point to the *misconduct* (lies, rigged account books, self-dealing by a fiduciary) that reflects the bad faith or constitutes the fraud.") (emphasis in original).

Notably, the Debtor did not argue lack of good faith based on a commercially unreasonable sale, but rather that the Debtor did not receive verbal or written notice of the sale. The Debtor has pointed to no evidence that would indicate self-dealing, improper motivation, or other misconduct by the Association in advertising the foreclosure sale or by mailing notice of the foreclosure sale to the only address it had on file for the Debtor. The Debtor has not pointed to any statutory or case law that would require the Association to provide verbal notice of the foreclosure sale by telephone or in person on January 6. In fact, in the condominium foreclosure context, Massachusetts law does not require notice to be provided to the Debtor at all, but only requires publication notice. *See* MGL Ch. 254, § 5A. The District Court Order did not mandate notice to the Debtor. Instead, the District Court Order required the foreclosure sale be announced "by a notice of sale in the form required published in the Springfield Republican Newspaper," and specified that "[N]o other publication or advertising need be made." Motion, Exhibit B, District Court Order at 2, ¶ 8. Moreover, pursuant to MGL ch. 183A, § 4, it was the *Debtor's* obligation to affirmatively provide the Association "written notice . . . of any changes in the name or mailing

8

address previously provided," and the Association is statutorily permitted to "rely in good faith upon the most recent notice of name and address for the purpose of providing notices to the unit owner." MGL Ch. 183A, § 4.

The Debtor has argued that the recent inability of the Debtor's proposed broker to access the Unit demonstrates a "pattern of obstinance . . . a pattern that led to an improper foreclosure sale." Supplemental Opposition at 3. The Court reads nothing in the communications between counsel that demonstrate the Association was acting obstinately – counsel for the Association merely communicated counsel's understanding that the Debtor or the broker needed to work with the tenant in possession of the Unit and that the Association did not believe it had the authority to authorize viewings. As the parties agree that the foreclosure sale was conducted in accordance with statutory requirements and the Debtor has failed to persuade the Court that the Association breached its obligation of good faith with regard to the foreclosure sale, the Court finds and rules that the foreclosure sale was validly conducted pursuant to applicable Massachusetts law.

B.    **Right of Redemption**

In the Initial Opposition, by citing to *Weiss v. U.S. Bank, N.A. (In re Mularski)*, 565 B.R. 203 (Bankr. D. Mass. 2017), the Debtor implied – but did not clearly argue – that the Debtor retained the right of redemption on the petition date because no foreclosure documents had been filed in the registry. But the *Mularski* court did not hold that the right of redemption remained with the Debtor on the petition date because foreclosure documents had not been recorded. Instead, the court specifically noted that the "foreclosure sale foreclosed [the debtor's] equity of redemption," *id.* at 207, and held that because a mortgagor's equity of redemption is considered an interest in real property under Massachusetts law, the transfer of the equity of redemption via

9

the foreclosure sale was not perfected on the petition date and that transfer could be avoided by a Chapter 7 trustee pursuant to § 544 of the Bankruptcy Code. *Id.* at 207-08.

After the Court expressed its skepticism regarding the Debtor's reliance on *Mularski* (given that the case did not stand for the proposition the Debtor said it did), the Association filed a fulsome brief setting forth several grounds for its contention that the Debtor's right of redemption was extinguished prepetition. Despite the Debtor's burden of persuasion on this issue pursuant to § 362(g) of the Code, the Debtor did not further develop any argument against the Association's assertion, and, at the conclusion of the Hearing, Debtor's counsel affirmatively relinquished the argument that the right of redemption was retained by the Debtor on the petition date. Accordingly, the Court accepts, for the purposes of *this* case, that the Debtor no longer held a right of redemption on the petition date. *See Benjamin v. Fremont Investment & Loan*, Civil Action No. 17-11727-PBS, 2020 WL475242, *7 (D. Mass. Jan. 28, 2020) (plaintiff's failure to address a defendant's revised argument at hearing or in sur-reply amounted to a waiver of an argument); *see also, e.g., Eldridge v. Gordon Bros. Grp., L.L.C.*, 863 F.3d 66, 84 (1st Cir. 2017) (waiver of an argument obviated the need for the district court to address the merits); *U.S. v. Caparotta*, 676 F.3d 213, 218 (1st Cir. 2012) ("argument consist[ing] of just two sentences and two cursory citations in his brief . . . is therefore waived"); *J. Cajigas & Assoc., PSC v. Municipality of Aguada*, 2014 WL 320653, *2 (D.P.R. Jan. 29, 2014) ("Perfunctory and undeveloped arguments and arguments that are unsupported by pertinent authority, are deemed waived.").

IV. <u>CONCLUSION</u>

For all the foregoing reasons, the Court finds and rules that the foreclosure sale of the Unit conducted on January 20, 2022 was validly conducted in compliance with applicable

10

Massachusetts law. And because the Debtor did not retain the right to redeem the Unit as of the petition date, the Court will grant relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1). A separate order in conformity with this Memorandum will issue forthwith.

DATED: March 24, 2022                    By the Court,

                                         /s/ Elizabeth D. Katz
                                         Elizabeth D. Katz
                                         United States Bankruptcy Judge